```
               IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF KANSAS
```

JOHNATHAN M. GOODWIN,

                Plaintiff,

vs.                                        Case No. 12-2021-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

                Defendant.

                      MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

   The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II.  History of case**

On July 20, 2009, administrative law judge (ALJ) Guy E. Taylor issued a decision denying plaintiff disability benefits (R. at 9-17). Plaintiff sought judicial review of the agency action, and on September 8, 2010, the U.S. District Court of

Kansas reversed and remanded the case for further hearing, granting defendant's motion to reverse and remand. Goodwin v. Astrue, Case No. 09-2623-JWL (D. Kan. Sept. 8, 2010; Doc. 25).

On September 13, 2011, administrative law judge (ALJ) Guy E. Taylor issued a 2nd decision (R. at 760-769). Plaintiff alleges that he has been disabled since January 9, 2007 (R. at 760). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 762). At step two, the ALJ found that plaintiff had the following severe impairments: attention deficit hyperactivity disorder and Asperger's disorder (R. at 763). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 763). After determining plaintiff's RFC (R. at 764), the ALJ determined at step four that plaintiff has no past relevant work (R. at 767). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 768). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 769).

**III. Did the ALJ err in his consideration of the opinions of the treatment providers?**

The record contains a June 10, 2009 letter from Dr. Risk, plaintiff's treating psychiatrist from June 1, 2006 to June 10, 2009. Dr. Risk indicated that he did not believe that plaintiff

5

could work, noting that he is unreliable and unlikely to complete assigned tasks and apparently continues to speak to imaginary people.  Dr. Risk indicated that plaintiff has marked impairments in maintaining social functioning, marked deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner, and has repeated episodes of decompensation.  Dr. Risk further opined that even a minimal increase in mental demands or change in the environment would be predicted to cause the plaintiff to decompensate (R. at 744-749).

    The ALJ discounted the opinions of Dr. Risk, stating as follows:

> Both Dr. Risk and the case manager indicated claimant was not always compliant with his medication.  The bulk of the evidence shows that claimant's condition is stable provided he is consistent with his medication regimen.  Claimant testified he had not taken any medication for at least nine months.  There is, however, no showing that with a consistent medication regimen, claimant would not be able to maintain employment. Claimant's concentration and attention may be reduced but that does not keep him from simple work activity as he has demonstrated he is capable of performing even without medication.  Claimant's moods can be controlled with medication… .

(R. at 766-767).  However, the ALJ failed to mention this statement from the Appeals Council when the case was remanded:

> It appears from the discussion of this evidence [the opinions of Dr. Risk] in the

6

> hearing decision that the Administrative Law
> Judge rejected this opinion because the
> medical evidence of record reflected that
> the claimant was noncompliant with
> medication and that when the claimant was
> compliant, the claimant's impairments were
> not as severe as alleged by Dr. Risk.
> However, the record contains evidence
> consisting of copies of medication refills
> indicating that the claimant was taking
> medication at the time Dr. Risk rendered his
> opinion.

(R. at 854).[2] The Appeals Council directed the ALJ to resolve this issue.

In his 2nd ALJ decision, the ALJ stated that there was no showing that with a consistent medication regimen, the plaintiff would not be able to maintain employment (R. at 766). However, as the Appeals Council noted, the record contains evidence consisting of copies of medication refills indicating that the plaintiff was taking medication at the time Dr. Risk rendered his opinions. The ALJ did not mention this evidence, and the ALJ does not cite to any evidence that plaintiff was not taking medication at the time Dr. Risk rendered his opinions. Therefore, Dr. Risk stated that plaintiff was not able to work even when plaintiff was taking his medication. Thus, contrary to the ALJ's assertion, there was a showing, in the form of Dr. Risk's opinion, that even with a consistent medication regimen, plaintiff would not be able to work.

---

[2] The Appeals Council issued the remand order on October 15, 2010, after the 1st ALJ decision, and prior to the 2nd ALJ decision now before the court.

Dr. Scher, a non-examining medical source, testified at the hearing (R. at 797). Dr. Scher opined that plaintiff's limitations were less severe than those set forth by Dr. Risk (R. at 801-805). Dr. Scher also testified that the medication was effective when plaintiff took it (R. at 803); however, he further testified as follows:

> He has quite a few limitations due to his condition…Even under the best of circumstances with the medications he's receiving, he still has potential for exhibiting irritability, poor social judgment. Maybe angry outbursts.
>
> …………
>
> There is no question that there's episodic defective behavior that is related to—-the notes and to Dr. Risk's notes and Dr. Sharma's notes. But, again, these are not pervasive and continuous and, certainly, are much improved when he is taking medication. **But, despite taking medication, I still believe this is someone who is still at risk and would have to have great limitations in terms of the kind of work that he could consistently do.**
>
> …………
>
> However, this is somebody, if you deviate from a repetitive kind of setting, he would have difficulty making reasoned judgment. So, although, he was able to be educated enough and practiced enough to drive a car, I don't think that it's even a safe thing, because something might happen that would be a sort of routine for most people to tolerate and deal with that he would find intolerable and not deal with it appropriately.

> ............
>
> [When asked if there was just a minimal increase in demands or changes in that job environment, would he be able to handle that, Dr. Scher responded as follows:]
>
> I think with proper support and education and patience, he would be able to handle them. **I think if it was unexpected, unplanned and abruptly confronted with these changes, I don't think he could deal with that.**

(R. at 811, 812, 813-814, emphasis added).

In the ALJ's RFC findings, plaintiff was limited to simple, routine work with limited contact with supervisors, co-workers and the public and with the opportunity for a lead worker to be available for assistance (R. at 764). The ALJ gave greater weight to the opinions of Dr. Scher (R. at 767). However, the ALJ did not mention in his decision the opinion of Dr. Scher that plaintiff, despite taking medication, is someone who is still at risk and would have to have "great" limitations in terms of the kind of work that he could consistently do, or that even under the best circumstances with the medication he is receiving, he still has the potential for exhibiting irritability, poor social judgment, and maybe angry outbursts. Neither did the ALJ mention or include in his RFC findings that if plaintiff was abruptly confronted with an unexpected or unplanned minimal increase in demands or changes in the job, he

9

would not be able to handle it.[3]  These statement do not support the ALJ's assertion that plaintiff's condition is stable provided that he is consistent with his medication.  As Dr. Scher noted, although he is much improved when he is taking medication, he is still at risk, would have to have "great" limitations in terms of the kind of work he could consistently do, and could not handle a situation if confronted with an unexpected or unplanned minimal increase in demands or changes in a job environment.  Dr. Scher also testified that plaintiff would need to occasionally have job coaching and assistance in role playing and dealing with a situation; in other words, a very limited environment (R. at 807).  The ALJ's RFC findings do not fully incorporate all of the limitations noted by Dr. Scher, especially the limitation if plaintiff is abruptly confronted with an unexpected or unplanned minimal increase in demands or changes in a job environment; a similar limitation is included in the report from Dr. Risk.

Furthermore, the record also contains a mental impairment questionnaire prepared by Dr. Sharma, plaintiff's treating psychiatrist from March 2010 through January 2011 (R. at 1179-1184).  Dr. Sharma opined on May 4, 2011 that plaintiff has marked limitations in activities of daily living, marked difficulties in maintain social functioning, marked deficiencies

---

[3] This opinion is similar to the opinion of Dr. Risk that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate (R. at 747).

of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner, and has repeated episodes of decompensation. Dr. Sharma indicated that plaintiff would miss more than four days a month because of his impairments or treatment (R. at 1317-1320). Dr. Scher disagreed with the opinions of Dr. Sharma when he testified (R. at 805-807). However, the ALJ, although he mentioned Dr. Scher's testimony regarding the opinions of Dr. Risk, never mentioned Dr. Scher's testimony regarding the opinions of Dr. Sharma. At no time in his decision did the ALJ discuss or mention the opinions of Dr. Sharma, or indicate what weight, if any, he was according to the opinions of Dr. Sharma.

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). This rule was recently described as a "well-known and overarching requirement." Martinez v. Astrue, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. The ALJ "will" evaluate every medical opinion that they receive, and will consider a number of factors in deciding the weight to give to any medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). It

is clear legal error to ignore a medical opinion. Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005). Furthermore, according to SSR 96-8p:

> If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7.

Although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss significantly probative evidence that he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). Furthermore, the general principle that the ALJ is not required to discuss every piece of evidence does not control when an ALJ has opinion evidence from a medical source. In such a situation, the ALJ must make clear what weight he gave to that medical source opinion. Knight v. Astrue, 388 Fed. Appx. 768, 771 (10th Cir. July 21, 2010).

Defendant argues that the failure of the ALJ to address the opinions of Dr. Sharma is harmless error because the ALJ considered the testimony of Dr. Scher, who testified regarding the opinions of Dr. Sharma. Courts should apply the harmless error analysis cautiously in the administrative review setting. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right

exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way.  Fischer-Ross, 431 F.3d at 733-734; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

An ALJ must not consider the opinions of one treating source in isolation, but his opinions must be considered in light of the entire evidentiary record, including the opinions and assessments of other treating sources.  The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the evidentiary record, and, in particular, on the evaluation of reports and opinions of other medical treating or examining sources, and the need for the ALJ to take this into consideration.  See Lackey v. Barnhart, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005).  In general, more weight is given to the opinions of a treating medical source than to the opinions of other medical sources, and the opinions of an examining medical source are entitled to more weight than the opinions of a non-examining medical source.  20 C.F.R. § 404.1527(c)(1,2); 416.927(c)(1,2).  Furthermore, the ALJ must provide a legally sufficient explanation for rejecting the opinions of treating and examining medical sources in favor of a

non-examining medical source. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

In light of the fact that two treating sources have opined that plaintiff has more severe mental limitations than those found by the ALJ, the problems with the ALJ's analysis of the opinions of Dr. Risk, and the failure to discuss or incorporate all of the testimony of Dr. Scher regarding plaintiff's limitations in his RFC findings, the court cannot say that the failure to discuss the opinions of Dr. Sharma was harmless error. Therefore, this case shall be remanded in order for the ALJ to give proper consideration to all the medical opinion evidence.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 12th day of March, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge